UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Tyrone R. Herman,

        Defendant.

Case No. 14-cr-285 (JNE)
Case No. 16-cv-1069 (JNE)
ORDER

Defendant filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (2012). For the reasons set forth below, the Court denies the motion and declines to issue a certificate of appealability.

In September 2014, the United States filed an Information that charged Defendant with one count of wire fraud. The next month, Defendant waived prosecution by indictment and entered a guilty plea. Defendant retained Eric Olson to represent him. Mr. Olson represented Defendant through sentencing.

In the plea agreement, the parties calculated the guideline range of imprisonment to be 78–97 months. The calculation was based on a total offense level of 28 and a criminal history category of I. The parties agreed that the base offense level was 7. They agreed to a 20-level increase because the loss exceeded $7 million and was less than $20 million, a 2-level increase because the offense involved at least 10 victims, and a 2-level increase because the offense involved sophisticated means. The United States agreed to recommend that Defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions. Defendant understood and agreed that the

1

recommendation was subject to the following conditions: (1) Defendant "testifies truthfully during the change of plea and sentencing hearings"; (2) Defendant "provides complete and truthful information to the Probation Office in the pre-sentence investigation"; and (3) Defendant "commits no further acts inconsistent with acceptance of responsibility."

The parties acknowledged that their calculation of the sentencing guidelines did not bind the Court:

> The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

Under certain conditions, Defendant agreed to waive his rights to appeal his sentence and to file a motion under § 2255:

> The defendant understands that 18 U.S.C. § 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal defendant's sentence, unless the sentence exceeds 97 months. . . . In addition, the defendant expressly waives the right to petition under 28 U.S.C. § 2255. However, the waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

Based on a total offense level of 33 and a criminal history category of I, the presentence investigation report calculated the guideline range of imprisonment to be 135–168 months. The calculation was based on a base offense level of 7, a 22-level increase because the loss was more than $20 million but not more than $50 million, a 2-level increase because the offense involved at least 10 victims but less than 50 victims, and a 2-level increase because the offense involved sophisticated means. No reduction for acceptance of responsibility was applied.

The United States objected to the presentence investigation report's loss amount:

> The United States acknowledges that, based on additional information received from investors, the intended loss amount now exceeds $20 million as stated in the presentence investigation report. However, at the time the United States entered into its agreement with the defendant, the loss amount known to the United States was under $20 million (approximately $19.4 million). Therefore the United States objects to a 22-level enhancement and stands by its calculation in the plea agreement that only 20 levels should be added under USSG §2B1.1(b)(1)(K).

Defendant's objections related to the loss amount and acceptance of responsibility. As to the loss amount, Defendant stated:

> The defendant believes that the amount of loss should be offset by what he repaid some of the victims; therefore the amount of loss would be under $20 million. Moreover, [Defendant] entered into an agreement with the Government to resolve this case in a timely fashion and the parties agreed to an amount of loss between $7 and 20 million. Additionally, the defendant objects to the loss amounts attributed to . . . as it relates to . . . and its request for attorney fees. Therefore, [Defendant] objects to a 22-level enhancement and requests 20 levels be added under USSG §2B1.1(b)(1)(K).

As to acceptance of responsibility, Defendant stated:

> The presentence investigation report recommends that [Defendant] not receive a 3-point adjustment for Acceptance of Responsibility. This

> recommendation is based on [Defendant] having an ongoing conversation with one of the victims about [Defendant] repaying his debt. [Defendant] in a timely fashion has truthfully admitted to the facts of his criminal behavior, and has clearly demonstrated acceptance of responsibility for his offense. He pled guilty by information and did not require the Government to proceed to a grand jury. He saved the Government and the Courts a large amount of resources by not fighting this case in court. [Defendant] has pled guilty because of his affirmative recognition of his own guilt. [Defendant's] behavior was not inconsistent with acceptance of responsibility.

The probation officer's response to Defendant's objection regarding acceptance of responsibility states in part:

> As outlined in the presentence investigation report, while the defendant did plead guilty, he continued to engage in behavior part of the instant offense throughout the investigation, including days before his guilty plea and on several occasions thereafter. This officer does not see the defendant's contacts with victim SW as merely "an ongoing conversation with one of the victims about...repaying his debt," for several reasons. [Defendant] continues to lull this victim with the same kind of false statements he had used with other victims, including discussion of a divorce as a reason that payments could not occur. He continues to reference the debt as "principal" and "interest," as if the money received from the victim had gone to a legitimate investment opportunity. [Defendant's] payment plan, at one point, promising payments of more than $42,000 and $89,000 quarterly in 2015 and 2016, would be impossible, as historical payments of those amounts had only ever occurred due to his offense and obtaining new investor money. Additionally, if [Defendant] did consider his conversations with the victim as an unrelated debt payment, he did not disclose it in his financial statements to the U.S. Probation Officer.

The parties filed memoranda in anticipation of sentencing. The United States asserted that the loss amount should yield a 20-level increase to the offense level and that no reduction for acceptance of responsibility applied. Defendant also asserted that the loss amount should yield a 20-level increase to the offense level. He sought a 2-level reduction for acceptance of responsibility.

4

At sentencing, the Court calculated the guideline range of imprisonment to be 108–135 months based on a total offense level of 31 and a criminal history category of I. In relevant part, the Court determined that the amount of the loss exceeded $20 million and increased the offense level by 22 levels. The Court reduced the offense level by 2 levels for acceptance of responsibility. The Court sentenced Defendant to 120 months' imprisonment, 3 years' supervised release, restitution of almost $13 million, and a $100 special assessment. Defendant did not appeal.

Approximately 11 months after his sentencing, Defendant filed his § 2255 motion. He asserted a claim of ineffective assistance of counsel. Defendant claimed that he asked Mr. Olson about the process to appeal after sentencing. Mr. Olson allegedly responded that he saw no appealable issues.

The Court held an evidentiary hearing at which Mr. Olson and Defendant testified. The Court also received several exhibits, including correspondence between Mr. Olson and Defendant in the time when Defendant could have filed a notice of appeal.

The test of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to a claim of ineffective assistance of counsel based on a failure to file a notice of appeal:

> In *Strickland v. Washington*, . . . we held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance, and announced a now-familiar test: A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. Today we hold that this test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal.

*Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (citations omitted). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477; *see United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required."). "At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477.

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. The term "consult" means to advise the defendant about the advantages and disadvantages of appealing and to make a reasonable effort to ascertain the defendant's wishes. *Id.* "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If counsel did not consult with the defendant, the court must address "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to

6

appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. A court must consider "all the information counsel knew or should have known":

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.*

"If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief. Accordingly, we hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484 (citation omitted).

At the hearing, Mr. Olson testified that he and Defendant "had a couple different conversations" after the sentencing, that Defendant was "very upset with the sentencing," and that Defendant asked about an appeal. Mr. Olson testified that he and Defendant "went through the issues generally meaning we talked about the amount of loss that was in dispute," that they "talked about guidelines generally," that he advised Defendant that

7

he did not believe there were any "successful appealable issues," and that Defendant "chose not to appeal based on that." Mr. Olson testified that he and Defendant specifically discussed the amount of loss and may have discussed the third point for acceptance of responsibility.

Defendant testified that he asked Mr. Olson about an appeal after sentencing, that he and Mr. Olson discussed the amount of loss, and that he "was asking questions about everything." Defendant acknowledged that Mr. Olson left the decision whether to appeal to Defendant. Defendant also acknowledged that he did not ask Mr. Olson to file a notice of appeal.

Correspondence between Defendant and Mr. Olson within the period when Defendant could have filed a notice of appeal confirms that Mr. Olson advised Defendant about an appeal and that Defendant decided not to appeal. On June 5, 2015, Defendant wrote:

> Hi Eric[.] I received your message. Obviously that sucks.
>
> At the very least is there anyway could get my report date extended. I realize it's probably ridiculous, but my granddaughter's birthday is . . . and she is kind of having a hard time with us as my entire family is. If there is anyway I could stay out until then it would be a Godsend.
>
> This may sound stupid, but it's just the way my mind works: is there anyway you could say to them that I wanted to appeal, but you talked me out of it and in exchange we were wondering if I could get an extension?

The same day, Mr. Olson responded:

> I can inquire about your report date. But I cannot explain to them that I talked you out of your right to appeal. Just so we are clear, in no way am I trying to talk you out of anything. What I have said is that the judge sentenced you within the range, in actuality she could have sentenced you

> to another 15 months and still had been in the appropriate range. I do not see any successful appeal issues, but I am not trying to talk you out of anything. I am just trying to give you my honest interpretation of the issues.

A few days later, Defendant wrote, "Thanks, Eric. I understand. If it's futile, no sense in trying it." The next day, Defendant wrote, "Of course since it's the deadline for appealing, I've got a case of the panics…knowing there's no turning back after today. Just confirming that you think there would be no benefit to appealing." Mr. Olson responded the same day: "I understand your emotions. I have not changed any of my opinions. We have had two weeks to discuss this and now I receive this last minute email. Like I said earlier, I am not here to talk you into or not appealing. I have giv[en] you my opinion on the issues and outcome[.] I cannot do anymore [than] that." Defendant replied a few hours later: "I apologize for the frustration I am causing you. Obviously my emotions are all over the place."

Mr. Olson consulted with Defendant about appealing. The advice that Mr. Olson gave Defendant about an appeal did not fall below an objective standard of reasonableness. *See United States v. Castillo*, 779 F.3d 318, 322-23 & n.6 (5th Cir. 2015) (acceptance of responsibility); *United States v. Hatchett*, 622 F.3d 984, 987-88 (8th Cir. 2010) (amount of loss). Defendant did not instruct Mr. Olson to file a notice of appeal. Defendant chose not to appeal. Mr. Olson did not provide ineffective assistance of counsel to Defendant. *See United States v. Walking Eagle*, 742 F.3d 1079, 1082-83 (8th Cir. 2014). The Court denies Defendant's § 2255 motion.

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B) (2012); Fed. R. App. P. 22(b)(1).  A court cannot issue a certificate of appealability unless the applicant has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, Defendant has not shown that reasonable jurists would find the rejection of his claim debatable or wrong.  Thus, the Court declines to issue a certificate of appealability.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's § 2255 motion [Docket No. 28] is DENIED.
2. A certificate of appealability is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 21, 2017

                                                  s/ Joan N. Ericksen
                                                  JOAN N. ERICKSEN
                                                  United States District Judge